J-S42017-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: P.W.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: W.B., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 445 EDA 2019 |

Appeal from the Decree Entered, January 11, 2019,
in the Court of Common Pleas of Philadelphia County,
Family Court at No(s):  CP-51-AP-0000479-2018.

| | | |
|---|---|---|
| IN THE INTEREST OF: P.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: W.B., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 447 EDA 2019 |

Appeal from the Order Entered, January 11, 2019,
in the Court of Common Pleas of Philadelphia County,
Family Court at No(s):  CP-51-DP-0000535-2016.

BEFORE:   OTT, J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY KUNSELMAN, J.:              **FILED SEPTEMBER 13, 2019**

W.B. (Father) appeals the decree granting the petition filed by the Philadelphia Department of Human Services (DHS) that involuntarily terminated his parental rights to 4-year-old P.W.B. (Child) pursuant to the

_____

[*] Retired Senior Judge assigned to the Superior Court.

Adoption Act.[1] *See* 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). After review, we affirm.

We glean the relevant history from the trial court opinion filed pursuant to Pa.R.A.P. 1925(a):

> DHS originally became involved with this family on February 28, 2016, after DHS received a General Protective Services (GPS) report which alleged that police officers responded to a complaint regarding a domestic dispute at the home of Mother and Father; Father claimed that Mother locked him and Child out of the home and that Mother was under the influence of a substance and that Mother was not taking her prescribed medication; Child and Father had no resources for the night because Mother refused to open the door to the home for Child and Father; police were able to obtain a telephone number from Father for Paternal Grandfather; Child and Father were transported to Paternal Grandfather's home. This report was determined to be valid.
>
> On March 2, 2016, DHS visited the home of Paternal Grandfather, where he and Child were present. Paternal Grandfather indicated he had taken Father to Friends Hospital and that Father was being treated for his substance abuse issues. Paternal Grandfather indicated that this was not the first time he had to care for Child because Father and Mother were unable to care for him. Father had previously been unable to care for Child while he was in treatment. On that same day, DHS obtained an Order of Protective Custody (OPC) for Child.
>
> On March 4, 2016, a shelter care hearing was held for Child. Father was not present for this hearing. The trial court lifted the OPC, ordered that the temporary commitment to DHS was to stand, and ordered Father to attended supervised visits with Child at the agency.

---

[1] The trial court also terminated the rights of C.P. (Mother); that appeal is part of a separate matter that is also before this panel.

> On March 14, 2016, Child was adjudicated dependent and fully committed to DHS.

Trial Court Opinion (T.C.O.), 4/22/19, at 1-2 (footnotes and citations to the record omitted).

Over the course of the next 34 months, Father struggled to maintain his sobriety for any meaningful length of time. He was inconsistent with his reunification goals. Father never completed treatment programs for his drug addiction or his mental health. His visitation with Child was irregular. In June 2018, DHS filed a petition to involuntarily terminate Father's parental rights. After a hearing on January 11, 2019, the court granted the petition and terminated Father's rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b).[2] Father filed this timely appeal. He presents three issues for our review, which we reorder for ease of disposition:

1. Whether the trial court committed reversible error when it allowed inadmissible hearsay evidence because [the court] did not properly apply the business record exception. In addition, the business records were not admitted into the record thereby making the testimony as to the contents inadmissible?

2. Whether the trial court committed reversible error when it involuntarily terminated Father's parental rights where such determination was not supported by clear and convincing evidence under Adoption Act. 23 Pa.C.S.A. § 2511(a)(1), (a)(2)?

3. Whether the trial court committed reversible error when it involuntarily terminated Father's parental

_____

[2] Child's interests were properly represented pursuant to 23 Pa.C.S.A. § 2313(a).

rights without giving primary consideration to the
effect that the termination would have on the
developmental, physical and emotional needs of Child
as required by Adoption Act. 23 Pa.C.S.A. § 2511(b)?

Father's Brief at *4 (not paginated).

We begin our discussion with Father's contention that the court erred by improperly admitting hearsay under the business records exception. The decision of whether to admit or exclude evidence is within the sound discretion of the trial court. *In re A.J.R.-H.*, 118 A.3d 1157, 1166-1167 (Pa. 2018) (citations omitted).  A reviewing court will not disturb these rulings absent an abuse of discretion. *Id.*, 118 A.3d at 1167 (citation omitted).  Discretion is abused if, *inter alia*, the lower court overrides or misapplies the law. *Id.* (citation omitted).

*In re A.J.R.-H* concerned a case where a trial court admitted, all at once, 167 exhibits offered by a Children and Youth Services (CYS) agency in a termination of parental rights hearing.  There, the local CYS engaged in a common practice of proffering for admission all of its exhibits at the starts of hearings under the auspices of the business records exception.  Our Supreme Court took issue.  Critically, the error was not the *en masse* admission of exhibits, *per se*.  Rather, the trial court erred because the admission did not

meet the criteria of the business records exception.[3] ***See generally In re***

***A.J.R.-H.***, 118 A.3d at 1167-1170.

_____

[3] "Hearsay" is "a statement that (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Pa.R.E. 801(c). Under the Pennsylvania Rules of Evidence, hearsay evidence is incompetent and inadmissible unless it meets an exception set forth in the Rules or one prescribed by this Court or statute. Pa.R.E. 802. One such exception to the prohibition against hearsay, at issue in this case, is commonly known as the business records exception, which permits the admission of:

> A record (which includes a memorandum, report, or data compilation in any form) of an act, event or condition if:
>
> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a "business", which term includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit;
>
> (C) making the record was a regular practice of that activity;
>
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>
> (E) the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.

Pa.R.E. 803(6). ***See also*** 42 Pa.C.S. § 6108(b) ("A record of an act, condition or event shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the tribunal, the sources of information, method and time of preparation were such as to justify its admission.").

Returning to the case at bar, we never arrive at Father's claim that court ran afoul of the business records exception, because Father did not preserve the issue for our review. "Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a).

Father made no objection when DHS proffered its exhibits for admission. Father made no objection when the testifying witnesses referenced the exhibits or the information therein. The only objection to which Father directs us occurred during an exchange with the DHS caseworker. *See* N.T., 1/11/19, at 23-28. The issue there was whether Father overdosed while Child was in his care. Insofar as we can discern, the confusion involves the timeframe of the overdose and whether Child was in Father's physical possession at the time. That objection was ultimately sustained by the court. Meanwhile, the fact that Father had experienced relapses had already made its way into the record without objection.

On appeal, Father seeks to bootstrap the evidentiary ruling about the overdose to his argument that Father's demonstrated history of drug abuse was wrongly admitted at trial. The problem, however, is Father only objected to one narrow issue during the testimony; he did not object when DHS proffered – and the court admitted – DHS's exhibits. The rules cannot be clearer. Father cannot raise the matter for the first time on appeal, and thus his first appellete issue is waived.

We turn now to Father's second issue, which concerns the initial prong of the section 2511 analysis. Here, too, Father faces waiver. Termination of

parental rights is governed by Section 2511 of the Adoption Act, 23 §§ 2101-2938, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

Regarding the first prong of the termination analysis under section 2511(a), the trial court terminated Father's rights pursuant to subsections 2511(a)(1), (2), (5), (8). In his concise statement, Father only appealed subsection 2511(a)(2). In the Questions Involved section of his brief, Father partially corrects his mistake and raises subsections 2511(a)(1) and (2). In the body of his argument section, Father manages to reference all four grounds upon which the court terminated: 2511(a)(1), (2), (5), and (8). We conclude that Father waived his challenge to the court's decision under subsections 2511(a)(1), (5), and (8). "Issues not included in the [concise statement of errors complained of on appeal] and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived." Pa.R.A.P. 1925(b)(4)(vii).

Even if we declined to find waiver of Father's claims under subsections 2511(a)(1), (5) and (8), we would still conclude the trial court did not abuse its discretion in terminating Father's rights under 23 Pa.C.S.A. § 2511(a)(2), the only ground which Father properly preserved.

Regarding subsection 2511(a)(2), we have explained:

> In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.
>
> The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1216 (Pa. Super. 2015) (citations, internal quotation marks, and indentation omitted).

The trial court made the following findings:

> Throughout the time that Child has been in the custody of DHS, Father's SCP objectives were to attend the CEU for drug screens, comply with recommendations of his drug and alcohol program, maintain stable housing, make himself available for necessary home visits and appointments, attend visitation with Child, and complete a [parenting capacity evaluation]. Father was aware of his objectives. […]
>
> Father admitted that he has been inconsistent with regularly attending drug treatment. […] Father refuses to follow the orders of the trial court to provide random screens or even attended the CEU. When Father did complete a drug screen

in May 2018, Father's creatinine was diluted.[4] […] CUA has been unable to verify if Father's home is stable and appropriate. CUA has attempted to schedule a home assessment at Father's home, but Father has not made the home available. […] [] Father completed Family School with Child after attending from July 2017 to April 2018, but the visits reverted back to supervised at the agency due to Father's inconsistent attendance and previous drug relapse. Father has not provided a reasonable explanation from the inconsistent attendance. […] At the time of the [parental capacity evaluation], Father presented with the capacity to provide safety and permanency to Child, as long as he complied with the recommendations. Throughout the life of the case, Father has been unable to successfully complete all of his objectives, especially maintain a consistent period of sobriety.

T.C.O., at 10-12 (citations to the record omitted).

The record reveals that Father has demonstrated a continued incapacity, which has caused the Child to be without his parental care, and which he is unable to remedy. Upon our review, we opine that the trial court's determinations were supported by the record, and thus the court did not abuse its discretion. Therefore, even if Father did not waive part of his challenge, we would conclude, nevertheless, that the first prong of the termination analysis has been satisfied.

Next, we consider Father's third and final issue, whether termination was proper under section 2511(b).

We review these claims mindful of our well-settled standard or review:

---

[4] The trial court noted that creatinine is a by-product produced by human kidneys that enables the trial court to ascertain whether the individual is "washing" his or her urine by drinking substances before drug testing to dilute and mask any drugs in their urine. **See** T.C.O., at n.7.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first -hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotations marks omitted).

With regard to section 2511(b), our Supreme Court has stated as follows:

> [I]f the grounds for termination under section (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include [i]ntangibles such as love, comfort, security, and stability.... [T]his Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond.

*In re T.S.M.*, 71 A.3d at 267 (internal case citations omitted).

While a parent's emotional bond with his or her child is a major aspect of the section 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the trial court when determining what is in

the best interest of the child. *In re A.D.*, 93 A.3d 888, 897 (Pa. Super. 2014) (citing *In re K.K.R.–S.,* 958 A.2d 529, 535–536 (Pa. Super. 2008). The mere existence of an emotional bond does not preclude the termination of parental rights. *Id*., 93 A.3d at 897-898; *see also In re T.D.*, 949 A.2d 910 (Pa. Super. 2008) (trial court's decision to terminate parents' parental rights was affirmed where court balanced strong emotional bond against parents' inability to serve needs of child). Rather, the trial court must examine the status of the bond to determine whether its termination "would destroy an existing, necessary and beneficial relationship." I*d*. at 898 (citation omitted). Beyond the presence of the bond, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. *See In re Adoption of C.D.R.*, 111 A.3d at 1219.

Father argues that he shares a bond with Child. He points to the fact that Child refers to him as "dad." Father maintains he has attempted to maintain a relationship, as evidenced by his taking snacks and games to the visits with Child. Father also argues he should not be penalized because he was denied benefits.

The court acknowledged the presence of a bond, but the question is whether that bond is worth preserving. Here, Father's drug abuse and irregular visits with Child had caused the visitations to be scaled back to supervised. Although Father appeared appropriate with Child, and had spent enjoyable time with Child, this cannot be conflated with providing necessary

security and stability. While Child refers to Father as "dad", Child also referred to the foster parent as "mommy", the other child in the foster home as his brother, and, the foster family as his real family.

Section 2511(b) does not construe "needs and welfare" in financial terms. "The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent." 23 Pa.C.S.A. § 2511(b). Thus, the disparate income between Father and the foster parent is irrelevant. What is relevant, and indeed essential to this portion of the analysis, is the fact that Father's lack of progress has caused Child to without parental care for the better part of three years – the *vast* majority of Child's short life.

We observe that a parent's constitutional right to the custody and child rearing of his child is converted, upon the failure to fulfill his parental duties, to the child's right to have proper parenting and fulfillment of his potential in a permanent, healthy, safe environment. *See In re Z.P.*, 994 A.2d 1108, 1120 (Pa. Super. 2010) (citation omitted). Following that trajectory, our Supreme Court has determined that children, who, like Child, are old enough to verbalize a preferred outcome, should have a voice in this discussion. *See In re T.S.*, 192 A.3d 1080, 1092 (Pa. 2018); *see also In re Adoption of L.B.M.*, 161 A.3d 172 (Pa. 2017). Here, Child has been without parental care for years and is in need of permanency. Child has also expressed a desire to remain with the foster family. The court was within its discretion to conclude

that Child would not suffer irreparable harm if the bond between Father and Child was severed.

Regarding the second prong of the termination analysis, the trial court concluded that DHS provided clear and convincing evidence that termination would best serve Child's needs and welfare. We conclude that this determination was not an abuse of discretion.

Decree affirmed.

Judgment Entered.



Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/13/19